UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CURTIS LAVERNE BAKER,

        Petitioner,

                                    CASE NO. 10-CV-13304
v.                                 HON. AVERN COHN

LLOYD RAPELJE,

        Respondent.
_____/

## MEMORANDUM AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

    This is a habeas case under 28 U.S.C. § 2254.  Michigan prisoner Curtis Baker was convicted of first-degree criminal sexual conduct following a jury trial in the Kent County Circuit Court.  He was sentenced as a third-habitual offender to life imprisonment.  Petitioner, proceeding pro se, has filed a habeas petition raising claims concerning discovery and the non-disclosure of evidence, the trial court's refusal to dismiss charges based upon the alleged non-disclosure of evidence and a 180-day rule violation, the admission of other acts evidence, victim photographs, expert testimony, and DNA evidence, the right to confront witnesses, the conduct of the prosecutor, the trial court's denial of substitute counsel, and the effectiveness of appellate counsel.  Respondent contends that Petitioner's claims lack merit and/or are barred by procedural default.  For the reasons that follow, the petition will be denied.  The Court will also deny a certificate of appealability.

## II.  Facts and Procedural History

Petitioner's conviction arises from the anal rape of a six-year-old boy ("SD") during a nighttime break-in at the boy's home in Grand Rapids, Michigan on June 18, 1992.  At trial in May, 2006, SD testified that he was asleep in his bedroom that night when his head was pushed into his pillow and he felt pain in his anal region.  There was one, or maybe two, men in the room.  After the man or men left, he went to the bathroom and saw blood in his stool.  He woke up his father and spent the rest of the night in his bed.  He also recalled going to the hospital for an examination.

SD's father testified that his son woke him up that night saying he was hurt, but he thought his son just had a bad dream.  In the morning, however, he noticed that a window in his son's bedroom had been taken out of its frame and was lying on the bed. He also noticed that some coins were missing from the residence.

SD's mother testified that she had been at the hospital with a relative that night. When she came home, she saw the condition of the window and noticed that some coins and rosaries were missing.  She also found blood on her son's anal area and in his underwear.  She contacted the police and took her son for a medical examination.

The doctor who examined SD testified that SD had trauma to his face and suffered internal and external lacerations of his anus.  The doctor did a rape kit and gave the evidence to the police.

Police officers testified about their investigation of the incident, including their interviews with SD and his parents.  An investigator testified that he observed footwear impressions on the roof of the porch and it appeared that entry had been made to the bedroom from that area.  No usable fingerprints were found at the crime scene.  The investigator took photographs of the crime scene and the victim.  Those photographs

were admitted into evidence.

A Michigan State Police forensic scientist testified that she received the rape kit in 1992. The rape kit included rectal swabs, rectal smears, and underwear. Her testing revealed no indication of seminal fluid on the rectal swabs, but sperm cells on the rectal smears and seminal fluid on the underwear. She prepared a report of her findings and preserved the evidence in frozen storage. The samples were sent to Orchid Cellmark Laboratories in Maryland in November, 2003.

A supervisor at Orchid Cellmark in 1992 explained the DNA testing methods used by the lab. She testified that DNA testing was done on two samples from the rape kit and male DNA was found. She personally tested the underwear from the rape kit and another member of her team tested the rectal swabs. The results were sent to the Michigan State Police. A Michigan State Police expert further discussed DNA testing and testified that he reviewed the testing procedures and results received from the independent lab. The results were entered into a profile data bank, CODIS, and a match for Petitioner was found on July 7, 2004. He contacted the Grand Rapids police and the Kent County Prosecutor's Office.

A Grand Rapids police detective testified that he was notified of the possible DNA match involving the 1992 incident in September, 2004. He interviewed Petitioner on February 10, 2005 after advising him of his rights. A redacted recording of the interview was played for the jury. The detective also testified that he took a buccal swab from the inside of Petitioner's cheek. The DNA match to Petitioner was confirmed. The odds of selecting an unrelated individual at random from the population have a similar racial DNA profile were one in two-and-a-half quadrillion.

A woman, NB, who had been the victim of a 1996 assault by Petitioner, also

3

testified at trial.  She said that Petitioner and another man knocked on her apartment door and asked to use her telephone.  After they did so, Petitioner grabbed her and she fought with him.  She was taken to her bedroom where Petitioner went through her belongings.  He then got on top of her, threatened her, and told her he would use a condom.  The other man returned with an extension cord.  She was tied up in the living room, but she was able to get free and contact neighbors, who called the police.

Petitioner testified in his own defense at trial.  He was living in Grand Rapids and employed by a local business in 1992.  He was on parole after being released from prison.  He admitted using drugs and alcohol during that time.  He denied being at the victim's home and denied committing the assault.  He did not know how his DNA got inside the victim.  He also claimed that NB was not being truthful in her testimony.  He felt that he was being railroaded.

At the close of trial, the jury convicted Petitioner of first-degree criminal sexual conduct.  The trial court sentenced him as a habitual offender to life imprisonment.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning discovery and the non-disclosure of evidence, the admission of bad acts evidence and victim photographs, and an alleged violation of Michigan's 180-day rule.  The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's conviction.  People v. Baker, No. 273006, 2007 WL 4404464 (Mich. Ct. App. Dec. 28, 2007) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  People v. Baker, 480 Mich. 1189 (2008).

Petitioner subsequently filed a motion for relief from judgment with the trial court raising claims concerning the admission of DNA evidence, expert testimony, and

4

hearsay evidence, the denial of substitute counsel, the non-enforcement of a discovery order, the conduct of the prosecutor, and the effectiveness of appellate counsel. The trial court denied the motion, finding that Petitioner had failed to establish cause or prejudice under Michigan Court Rule 6.508(D)(3) as the claims lacked merit and appellate counsel was not ineffective. People v. Baker, No. 05-06525-FC (Kent Co. Cir. Ct. June 4, 2009). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." People v. Baker, No. 293140 (Mich. Ct. App. Oct. 21, 2009). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. People v. Baker, 486 Mich. 1042 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.    He is entitled to a new trial where he was denied his right to due process where he had not received complete discovery material.

II.   The trial court erred in failing to dismiss the charges where the prosecution deliberately withheld "critical" DNA evidence, and the Michigan Court of Appeals' decision that no violation of the 180 day speedy trial right occurred because the 180 day clock was not triggered by the Department of Correction's failure to send a notice of incarceration and request for disposition involved an unreasonable application of clearly established federal law.

III.  The Michigan Court of Appeals' decision that the admission of the subsequent bad acts evidence at trial was harmless error was based upon an unreasonable application of clearly established federal law.

IV.   The trial court's erroneous ruling admitting prejudicial and irrelevant evidence of photos depicting the victim's injuries deprived him of a fair trial and the Court of Appeals' decision involved an unreasonable application of clearly established federal law.

V.    Appellate counsel was ineffective for failing to bring issues of meritorious value on direct appeal.

5

VI.     He was denied his right to a fair trial in violation of due process where the court allowed the impermissible expert testimony of two "key" state expert witnesses.

VII.    The trial court on multiple occasions violated his due process rights to a fair trial where he was denied his Sixth Amendment rights to confrontation.

VIII.   He was denied his due process rights to a fair trial where the prosecution concealed the destruction of potentially exculpatory crime scene evidence, elicited false testimony, and misstated facts not in evidence.

IX.     The trial court abused its discretion in not excluding the DNA evidence over defense objections, where the prosecution failed to lay a proper foundation of authenticity where the chain of custody was not complete.

X.      He was denied his Sixth Amendment right to the effective assistance of counsel where the court denied him substitution mid-trial upon "good cause" shown.

### III.  Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87 (internal quotation omitted).

        In simple terms, the Supreme Court has said that the standard of review is "difficult to meet ... and [is a] highly deferential standard."  Cullen v. Pinholster, 563 U.S. __, __, 131 S. Ct. 1388, 1398 (2011) (citing cases).  The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  Renico v. Lett, 559 U.S. __, __, 130 S. Ct. 1855, 1862 (2010) (citing cases).

        Finally, a federal habeas court must presume the correctness of state court

7

factual determinations.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  Cullen, 131 S. Ct. at 1398.

### IV.  Analysis

### A.  Direct Appeal Claims

### 1.  Discovery/Brady Violation

Petitioner first asserts that he is entitled to habeas relief because the prosecutor failed to provide complete discovery and/or withheld potentially exculpatory evidence concerning Orchid Cellmark's testing procedures and electronic data, which he claims impeded his ability to properly cross-examine the prosecution's expert witnesses.  The Michigan Court of Appeals denied relief on this claim, finding that no discovery violation occurred under state law and that Petitioner had failed to establish a Brady violation because he had not shown that the information at issue was favorable to the defense.  Baker, 2007 WL 4404464 at *1-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, to the extent that Petitioner alleges a violation of the trial court's discovery order or state discovery rules, he is not entitled to federal habeas relief.  A federal court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Trial court errors in the application of state procedure or evidentiary law are not cognizable as grounds for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  Thus, any claim by Petitioner that the prosecution violated the trial court's discovery

order or state rules does not provide a basis for federal habeas relief.  Lorraine v. Coyle,
291 F.3d 416, 441 (6th Cir. 2002).

Moreover, Petitioner has failed to establish a violation of his federal constitutional
rights.  It is well-settled that there is no general constitutional right to discovery in a
criminal case.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v.
Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).  The Supreme Court has held that the
prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of
due process "where the evidence is material either to guilt or to punishment, irrespective
of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87
(1963).  In other words, to find a Brady violation, not only must the evidence be
suppressed, but the suppressed evidence must be material and favorable to the
accused.  Elmore v. Foltz, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the
evidence been disclosed to the defense, the result of the proceeding would have been
different."  United States v. Bagley, 473 U.S. 667, 682 (1985); see also Kyles v. Whitley,
514 U.S. 419, 432-36 (1995).  Material evidence is that which is "so clearly supportive of
a claim of innocence that it gives the prosecution notice of a duty to produce."  United
States v. Clark, 988 F.2d 1459, 1467 (6th Cir. 1993).  The duty to disclose favorable
evidence includes the duty to disclose impeachment evidence.  Bagley, supra; Giglio v.
United States, 405 U.S. 150, 154-55 (1972).

The Brady rule only applies to "the discovery, after trial, of information which had
been known to the prosecution but unknown to the defense."  United States v. Agurs,
427 U.S. 97, 103 (1976); see also Mullins v. United States, 22 F.3d 1365, 1370-71 (6th
Cir. 1994).  Thus, in order to establish a Brady violation, a petitioner must show that:  (1)

9

evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt.  Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  A habeas petitioner bears the burden of establishing a Brady violation.  Carter, 218 F.3d at 601.

Petitioner has not met his burden.  He has failed to show that any non-disclosed evidence regarding DNA testing was favorable or exculpatory.  Moreover, as explained by Respondent, see Answer, pp. 14-19, the record shows that defense counsel was able to extensively cross-examine the expert witnesses about the DNA collection and testing procedures and to argue such matters at trial.  Petitioner has failed to establish a constitutional violation.  Habeas relief is not warranted on this claim.

### 2.  180-Day Rule

Petitioner next asserts that he is entitled to habeas relief due to a violation of Michigan's 180-day rule.  The Michigan Court of Appeals denied relief on this claim, stating that the 180-day period was triggered by the delivery of the Department of Corrections notice to the prosecution and that Petitioner failed to provide a factual basis for his claim.  Baker, 2007 WL 4404464 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  First, Petitioner is not entitled to habeas relief on any claim that the trial court violated Michigan's 180-day rule.  It is well-established that "federal habeas corpus relief does not lie for errors of state law."  Estelle, 502 U.S. at 67 (quoting Lewis, 497 U.S. at 780).  Thus, to the extent that Petitioner contends that Michigan's 180–day rule was violated, he is not entitled to federal habeas relief.  See

10

Burns v. Lafler, 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004) (denying habeas relief on similar claim).

Second, Petitioner has failed to demonstrate a violation of his federal speedy trial rights. The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial. U.S. Const. Amend. VI. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). No single factor is determinative, rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred. Id. at 533. The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'" Vermont v. Brillon, _ U.S. _, 129 S. Ct. 1283, 1290 (2009) (citation omitted).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530. Thus, to trigger a speedy trial analysis, a defendant must allege that the interval between accusation and trial has crossed the line between ordinary delay and presumptively prejudicial delay. Doggett v. United States, 505 U.S. 647, 651–52 (1992). Courts have generally found delays of one year or more to be "presumptively prejudicial." Id. at 652, n. 1.

Petitioner makes no such showing. The state court record indicates that an arrest warrant was issued on June 1, 2005 while Petitioner was in custody on prior convictions. Petitioner was arraigned on June 14, 2005. Trial commenced on May 9,

11

2006.  Consequently, the delay between the issuance of the arrest warrant or arraignment and start of trial was less than one year – which does not trigger a federal speedy trial claim.  Moreover, the record reveals that some of the pre-trial delay was due to defense discovery requests and Petitioner did not assert his speedy trial rights until March, 2006.  There is also no evidence that the prosecution delayed the trial to gain a tactical advantage or, most importantly, that Petitioner was prejudiced by any delay.  Petitioner has thus failed to establish a speedy trial violation.  Habeas relief is not warranted on this claim.

### 3.  Admission of Other Acts Evidence

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence – the 1996 assault victim's testimony.  The Michigan Court of Appeals denied relief on this claim, finding that the evidence was properly admitted under state law as evidence of a common plan or scheme and/or that any error in admitting the evidence was harmless given the DNA evidence presented at trial.  Baker, 2007 WL 4404464 at *3-5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  As noted above, state law errors generally do not provide grounds for federal habeas relief.  Estelle, 502 U.S. at 67–68.  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (quoting Estelle, 502 U.S. at 69–70); see also Wynne v. Renico, 606 F.3d 867, 871 (6th Cir. 2010) (citing Bey v. Bagley, 500 F.3d 514, 519-20 (6th Cir. 2007)); Bugh v. Mitchell, 329 F.3d 496, 512

12

(6th Cir. 2003).

Accordingly, to the extent that Petitioner asserts that the trial court erred in admitting the testimony under Michigan law, he merely alleges a state law violation which does not justify federal habeas relief.  Bey, 500 F.3d at 519.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters. Lewis, 497 U.S. at 780; see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of other acts, the United States Supreme Court has declined to hold that similar "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  Dowling v. United States, 493 U.S. 342, 352-53 (1990).[1]  Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  Bugh, 329 F.3d 496, 512 (6th Cir. 2003).  Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  Id. at 513; Adams v. Smith, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Petitioner has thus failed to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief.  He has not shown that the admission of the other acts evidence rendered his trial fundamentally unfair.  The other acts evidence was relevant and admissible on the issue of a common plan or scheme under Michigan Rule of Evidence 404(b).  The

---

[1]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, Old Chief v. United States, 519 U.S. 172 (1997); Huddleston v. United States, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

prosecution did not make an improper propensity argument at trial and the trial court

instructed the jury on the proper consideration of the evidence.  Jurors are presumed to

follow the court's instructions.  See Penry v. Johnson, 532 U.S. 782, 799 (2001) (citing

Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States v. Powell, 469 U.S. 57,

66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected

to follow it.").  Petitioner has failed to establish that the admission of the other acts

evidence was erroneous or, more importantly for purposes of habeas review, that it

rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### 4.  Admission of Photographs

Petitioner also asserts that he is entitled to habeas relief because the trial court

erred in admitted photographs of the victim's injuries.  The Michigan Court of Appeals

denied relief on this claim, finding that the evidence was properly admitted under state

law as proof of the elements of the offense and to corroborate the doctor's testimony

about the victim's injuries.  Baker, 2007 WL 4404464 at *5.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application thereof.  Again, alleged trial court errors in the application of

state law, particularly regarding the admissibility of evidence, are generally not

cognizable on federal habeas review.  Estelle, 502 U.S. at 67-68; Lewis, 497 U.S. at

780.  Federal habeas relief is warranted only where admission of the evidence is so

egregious as to deprive the defendant of the fundamental due process right to a fair

trial.  Wynne, 606 F.3d at 871.  Here, the photographs were relevant and admissible

under state law.  Moreover, the Court of Appeals for the Sixth Circuit has held that a

challenge to the admission of a gruesome photograph does not present a question of

constitutional magnitude.  See Cooey v. Coyle, 289 F.3d 882, 893-94 (6th Cir. 2002)

14

(citing Gerlaugh v. Stewart, 129 F.3d 1027, 1032 (9th Cir. 1997) (holding that gruesome photographs do not raise "the spectre of fundamental fairness such as to violate federal due process of law.")); see also Skrzycki v. Lafler, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) ("The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial."). Petitioner has failed to establish that the admission of the photographs violated due process or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

## B. Collateral Review Claims

### 1. Procedural Default

Respondent contends that Petitioner's remaining claims concerning the admission of expert witness testimony, the confrontation of witnesses, the conduct of the prosecutor, the DNA chain of custody, and the denial of substitute counsel are barred by procedural default because Petitioner first raised those issues in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D).

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006); Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005); Coleman v. Mitchell, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991). If the last state

15

judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. Id.

Petitioner first presented this claim to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. See Guilmette v. Howes, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under Guilmette, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

Here, the trial court denied relief on procedural grounds by ruling that Petitioner had not shown cause and prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal. The state courts thus clearly relied upon a procedural default to deny relief. Accordingly, these claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Nields v. Bradshaw, 482 F.3d 442 (6th Cir. 2007); Gravley v. Mills, 87 F.3d 779,

16

784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, a habeas petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." Strickland, 466 U.S. 668, 687 (1984); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994). In evaluating whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." Id. at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate

advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Counsel raised substantial claims on direct appeal including a discovery/Brady violation claim regarding the DNA evidence, a 180-day rule claim, and two evidentiary claims. Claims that Petitioner also raises before this Court. None of Petitioner's collateral review claims are "dead-bang winners," particularly given the DNA evidence establishing his guilt.

Moreover, even if appellate counsel erred, Petitioner cannot show that he was prejudiced by counsel's conduct (or demonstrate prejudice to excuse the procedural default) because the defaulted claims lack merit for the reasons stated by the trial court in denying relief from judgment, see Baker, No. 05-06525-FC at pp. 1-3 (discussing the merits in ruling that Petitioner failed to establish cause and prejudice to excuse his procedural default under Michigan Court Rule 6.508(D)(3)), and as further discussed by Respondent, see Answer, pp. 33-38.

As to habeas claim six, the DNA expert testimony was admissible under state law

18

and any perceived defects went to its credibility, not its admissibility.  Any claim of state law error does not warrant federal habeas relief.  <u>Estelle</u>, 502 U.S. at 67–68.  Petitioner has also not shown that the admission of the evidence rendered his trial fundamentally unfair so as to violate due process.  <u>Wynne</u>, 606 F.3d at 871; <u>McAdoo</u>, 365 F.3d at 494.[2]

As to habeas claim seven, Petitioner has not established that his confrontation rights were violated.  The witnesses at trial testified about their own conduct, their own observations, and/or their own tests, and the expert witnesses also provided general information about DNA analysis and procedures.  Such testimony did not violate the Confrontation Clause or <u>Crawford v. Washington</u>, 541 U.S. 36 (2004).  Moreover, even if certain testimony related to the contents of lab reports or work done by others, habeas relief cannot be granted.  Petitioner's conviction became final in 2008.  The applicability of the Confrontation Clause to lab test results, however, was not clearly established until <u>Melendez–Diaz v. Massachusetts</u>, 557 U.S. 305 (2009), was decided in 2009.  <u>See</u> <u>Meras v. Sisto</u>, 676 F.3d 1184, 1188 (9th Cir. 2012) (recognizing that the question of whether forensic lab reports are testimonial divided state and federal courts until the Supreme Court resolved the issue in <u>Melendez–Diaz</u>); <u>Vega v. Walsh</u>, 669 F.3d 123, 127–28 (2d Cir. 2012) (holding that <u>Melendez–Diaz</u> was inapplicable to habeas review of a 2002 state court decision).  Thus, at the time Petitioner's conviction became final, no clearly established Supreme Court precedent barred the admission of forensic evidence without in-court testimony by the analyst.

---

[2]Petitioner's reliance on <u>Daubert v. Merrell Dow Phamaceuticals, Inc.</u>, 509 U.S. 579 (1993), is misplaced.  <u>Daubert</u> concerned the Federal Rules of Evidence which are not relevant to Petitioner's conviction.  <u>Norris v. Schotten</u>, 146 F.3d 314, 335 (6th Cir. 1998).

As to habeas claim eight, Petitioner has failed to allege facts to show that the prosecution concealed the destruction of exculpatory evidence. His conclusory allegations are insufficient to warrant habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); see also Washington v. Renico, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing). Petitioner has also not shown that the prosecution knowingly presented false testimony. See United States v. Agurs, 427 U.S. 97, 103 (1976); Napue v. Illinois, 360 U.S. 264, 271 (1959); Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). His claims of perjury are based upon misinterpretations of the testimony. Moreover, there is no indication in the record that the prosecutor believed that any of the witnesses testified falsely or had reason to doubt the veracity of their testimony. Lastly, the prosecution did not misstate facts or argue facts not in evidence. The prosecutor's arguments were based upon the trial testimony. As such, they did not render the trial fundamentally unfair so as to violate due process. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see also Parker v. Matthews, __ U.S. __, 132 S. Ct. 2148, 2153 (confirming that Donnelly/Darden is the proper standard).

As to habeas claim nine, the trial court did not err in admitting the DNA evidence despite any alleged problems with the chain of custody. Any claim of state law error does not warrant federal habeas relief. Estelle, 502 U.S. at 67–68. Petitioner has also not shown that the admission of the evidence rendered his trial fundamentally unfair so as to violate due process. Wynne, 606 F.3d at 871; McAdoo, 365 F.3d at 494. The chain of custody issues were delved into at trial and went to the weight, rather than the

20

admissibility, of the evidence.  Petitioner has also not shown that the prosecution knowingly presented false testimony as to such matters.

As to habeas claim ten, Petitioner has not demonstrated that the trial court erred in denying his request for substitute counsel.  An indigent defendant does not have an absolute right to choose appointed counsel.  United States v. Gonzalez–Lopez, 548 U.S. 140, 151 (2006).  The record indicates that Petitioner failed to establish "good cause" to warrant the substitution of counsel after the start of trial.  See United States v. Iles, 906 F.2d 1122, 1130 (6th Cir. 1990).  He did not, and does not, show that any issues with counsel prevented an adequate defense.  See Benitez v. United States, 521 F.3d 625, 632 (6th Cir.2008).  His assertion that counsel conspired with the prosecution and the trial court to ensure a conviction is speculative and unsupported by the record. In sum, Petitioner's defaulted claims lack merit.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Moreover, actual innocence means factual innocence, not mere legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  Petitioner has made no such showing.  These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### 2.  Ineffective Assistance of Appellate Counsel

Lastly, Petitioner asserts an independent claim that he is entitled to habeas relief

21

because appellate counsel was ineffective for failing to raise the defaulted issues on direct appeal.  Petitioner is not entitled to relief on any such claim.  As previously discussed, he has failed to establish that appellate counsel was ineffective under the Strickland standard and the defaulted claims lack merit.  Habeas relief is thus not warranted on this claim.

## V.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and that his habeas petition must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  Slack, 528 U.S. at 484-85.

Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims and reasonable jurists could not debate the correctness of

the Court's procedural ruling.  A certificate of appealability is not warranted.

Accordingly, the petition for a writ of habeas corpus is DENIED.  A certificate of

appealability is also DENIED.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  April 17, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, April 17, 2013, by electronic and/or ordinary mail.


 S/Sakne Chami
Case Manager, (313) 234-5160